Evan J. Smith
Marc L. Ackerman
BRODSKY SMITH
Two Bala Plaza
333 E. City Ave., Suite 805
Telephone:    610.667.6200
Facsimile:    610.667.9029
esmith@brodskysmith.com
mackerman@brodskysmith.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY ROBERSON,<br><br>        Plaintiff,<br><br>    vs.<br><br>STRONGBRIDGE BIOPHARMA PLC, JOHN H. JOHNSON, DAVID GILL, GARHENG KONG, JEFFREY W. SHERMAN, MARTEN STEEN, HILDE H. STEINEGER,<br><br>        Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Jeremy Roberson ("Plaintiff"), by and through his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Strongbridge Biopharma plc ("Strongbridge" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants"), Xeris Pharmaceuticals, Inc. ("Parent"), through Wells MergerSub, Inc. ("Merger Sub" and together with Parent "Xeris,"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange

Act"), relating to the Individual Defendants' efforts to sell the Company to Xeris as a result of an unfair process, and to enjoin an upcoming stockholder vote on an all stock proposed transaction valued at approximately $267 million (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 24, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Strongbridge will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Xeris. Strongbridge shareholders will receive 0. 7840 of a Xeris share for each Strongbridge common share held.

3.     Thereafter, on July 29, 2021, Strongbridge filed a Definitive Proxy Statement on Schedule DEFM14A (the "Definitive Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     It appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Definitive Proxy Statement on July 29, 2021 with the SEC in an effort to solicit Plaintiff to vote his Strongbridge shares in favor of the Proposed Transaction.  The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the

financial projections for Strongbridge and Xeris, provided by Strongbridge and Xeris to the Company's financial advisor MTS Health Partners, LP ("MTS") and to Xeris's financial advisor, SVB Leerink LLC ("SVB Leerink"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by MTS, SVB Leerink, and provided to the Board.

6.      Accordingly, this action seeks to enjoin the Proposed Transaction.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of North Carolina and, at all times relevant hereto, has been a Strongbridge stockholder.

9.      Defendant Strongbridge is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs.  Strongbridge is incorporated in Ireland and has its principal place of business at 900 Northbrook Drive, Suite, 200, Trevose, PA 19053.  Shares of Strongbridge common stock are traded on the Nasdaq Stock Exchange under the symbol "SBBP."

10.     Defendant John H. Johnson ("Johnson") has been a Director of the Company at all relevant times.  In addition, Johnson serves as the Chief Executive Officer ("CEO") of the Company.

11.     Defendant David Gill ("Gill") has been a director of the Company at all relevant times.

12.     Defendant Garheng Kong ("Kong") has been a director of the Company at all relevant times. In addition, Kong serves as the Chairman of the Company Board.

13.     Defendant Jeffrey W. Sherman ("Sherman") has been a director of the Company at all relevant times.

14.     Defendant Marten Steen ("Steen") has been a director of the Company at all relevant times.

15.     Defendant Hilde H. Steineger ("Steineger") has been a director of the Company at all relevant times.

16.     The defendants identified in paragraphs 9 through 15 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

17.     Non-Party Xeris is a pharmaceutical company delivering innovative solutions to simplify the experience of administering important therapies that people rely on every day around the world. Xeris is incorporated in Delaware and has its principal place of business in Chicago, IL. Shares of Xeris common stock are traded on the Nasdaq Stock Exchange under the symbol "XERS."

18.     Non-Party Merger Sub is a party to the Merger Agreement and a wholly owned subsidiary of Xeris created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22.     Strongbridge, a commercial-stage biopharmaceutical company, focuses on the development and commercialization of therapies for rare diseases with unmet needs in the United States. The Company offers Keveyis, an oral carbonic anhydrase inhibitor to treat hyperkalemic, hypokalemic, and related variants of primary periodic paralysis. Its clinical-stage product candidates include Recorlev, a cortisol synthesis inhibitor, which is in Phase III clinical trials for the treatment of endogenous Cushing's syndrome; and Veldoreotide, a somatostatin analog that has completed Phase II clinical trial for the treatment of acromegaly. Strongbridge was founded in 1996 and is based in Trevose, Pennsylvania.

23.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated promising financial results.  For example, in the May 12, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted net product sales of $8.4 million for the first quarter ended March 31, 2021, representing a 25 percent increase over first quarter 2020 revenue of $6.7 million, with reported sales momentum continuing in April with KEVEYIS delivering the highest month of net product sales since its launch by the Company in 2017.

24.     Defendant CEO Johnson commented on the results in the Press Release, "'We delivered strong financial results in the first quarter with 25 percent quarter-over-quarter revenue growth achieved with KEVEYIS® (dichlorphenamide) versus the first quarter last year, providing a strong foundation as we enter the second quarter. Looking ahead, Strongbridge remains focused on

driving continued revenue growth for KEVEYIS and leveraging our operational and commercial expertise to further accelerate the growth of Strongbridge's rare disease portfolio. Strongbridge is currently awaiting notification from the U.S. Food and Drug Administration (FDA) regarding filing of the Company's New Drug Application (NDA) for RECORLEV® (levoketoconazole) for the treatment of endogenous Cushing's syndrome. We look forward to receiving the official Day 74 letter shortly and sharing an update thereafter, as well as the potential opportunity to bring a new therapeutic option to the Cushing's syndrome community.'"

***The Flawed Sales Process***

25.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

26.     Notably, while the Definitive Proxy Statement indicates that the Strongbridge Board created a committee of Independent Directors, the Definitive Proxy fails to indicate with sufficient specificity the powers held by the special committee, including whether the committee had the power to veto proposed strategic alternatives prior to review by the full Board.

27.     The Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

28.     Furthermore, the Registration Statement does not disclose adequate information as to why the Board agreed to a large portion of the merger consideration in the form of a non-tradeable CVR which has no guarantee of set value to Strongbridge stockholders.

29.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Xeris, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-

waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

31.     On May 24, 2021, Strongbridge and Xeris issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CHICAGO, Il., DUBLIN, Ireland and TREVOSE, Pa., – May 24, 2021** – Xeris Pharmaceuticals, Inc. ("Xeris") (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc ("Strongbridge") (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris common stock of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").
>
> Under the terms of the agreement at closing, Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own. Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021. Strongbridge shareholders will also receive 1 non-tradeable CVR for each Strongbridge ordinary share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings common stock (at Xeris Biopharma Holdings' election) upon achievement of the following triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per ordinary share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per ordinary share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per ordinary share). The minimum payment on the CVR per Strongbridge ordinary share is zero and the maximum payment

is $1.00 in cash or Xeris Biopharma Holdings common stock, at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.

"This is a very compelling transaction that will create a scalable and diversified biopharmaceutical company increasingly oriented toward more specialty and rare disease products, positioning us for long-term product development and commercial success," said Paul R. Edick, Chairman and Chief Executive Officer of Xeris. "Strongbridge's attractive rare disease portfolio and capabilities are highly complementary with Xeris. Building on the continuing prescription growth of Gvoke® with an enhanced and diversified growth profile, expanded and scalable salesforce, and expected cost-synergies, the combined company will be well positioned to deliver compelling long-term value to shareholders. We look forward to welcoming the Strongbridge team to Xeris and leveraging our differentiated portfolios and technologies to help the patients we serve improve their quality of life."

"We are excited to combine with Xeris to drive the next phase of our growth," said John H. Johnson, Chief Executive Officer of Strongbridge. "Strongbridge has made significant progress advancing its portfolio of therapies for rare endocrine and rare neuromuscular diseases with focus, commitment and passion for the patients and physicians that we serve. This includes delivering strong revenue growth for KEVEYIS® (dichlorphenamide), our first commercial, rare neuromuscular product, and the successful development of RECORLEV® (levoketoconazole), which is under review for approval by the FDA with expected commercialization in the first quarter of 2022 pending FDA approval. Through this combination with Xeris, we will gain additional scale and financial resources to better meet the unmet needs of those we serve. Our combined pipeline, drug development talent and commercial infrastructure will enable us to accelerate product launches and drive further growth. We look forward to working closely with the Xeris team to unlock the potential value of our combined assets, while providing our shareholders with the opportunity to participate in the success of the combined company."

Strategic Rationale and Financial Benefits of the Transaction

The combination of Xeris and Strongbridge is expected to deliver compelling strategic and financial benefits including:

- Diversified and Increased Revenue Growth. The combined company is expected to have a stronger revenue base with two rapidly growing commercial assets in Gvoke® and KEVEYIS®, and a near-term product launch in RECORLEV®. Gvoke® sells in a multi-billion dollar addressable market, as will RECORLEV®, if approved. With approval of RECORLEV® by the FDA, Xeris' experienced, endocrinology-focused commercial infrastructure is expected to enable a rapid product launch for RECORLEV® into the endocrinology community. With Gvoke®, KEVEYIS® and

RECORLEV®, the combined company will boast multiple, highly differentiated, growing, commercial assets that could have significant combined revenue potential, supported by a larger and more efficient commercial organization.

- Significant Potential Synergies. The combined company is expected to generate approximately $50 million in pre-tax synergies by the end of 2022 resulting from immediate savings, including redundant general, administrative and other public company costs, and from the avoidance of future costs, most notably within the commercial and medical affairs functions. Shareholders of the combined company are expected to benefit from significant cost avoidance and the potential for more rapid and achievable near-term growth by utilizing Xeris' existing commercial infrastructure to launch RECORLEV® soon after product approval. Xeris' management and the independent Xeris directors are committed to retaining and incentivizing the most talented individuals in their respective functions between the two companies to ensure continuity and ongoing success.

- Specialized Commercial Platform. The combined company will have a robust rare disease and endocrinology-focused commercial infrastructure, primed to bring the benefits of the company's products to a wider range of patients with unmet needs. At closing, the organization will have approximately 110 field sales representatives, as well as 50 inside sales and support employees, and a fully operational patient and provider support team, enabling a rapid potential product launch for RECORLEV® in the first quarter of 2022, as well enhanced sales across the entire portfolio.

- Expanded Development Pipeline. In addition to RECORLEV®, the combined company will have a robust pipeline of development programs to extend the current marketed products into important new indications and uses and bring new products forward using its formulation technology platforms, supporting long-term product development and commercial success.

- Strengthened Strategic Profile. This transaction will enable the combined company to have a scalable infrastructure for continued development of specialist oriented and rare disease products from its proprietary XeriSol™ and XeriJect™ formulation technologies, as well as consolidation of commercial- and late development-stage products and companies focused on endocrinology and rare diseases.

- Improved Access to Capital Markets. With enhanced scale, multiple revenue generating commercial assets and a high potential value near-term development pipeline, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the debt and equity markets at a lower cost of capital.

Additional Information

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, IL. On close, Xeris

shareholders will exchange each share of Xeris common stock they own for 1 share of Xeris Biopharma Holdings common stock.

Xeris Chairman and CEO, Paul Edick, will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings. The Xeris Biopharma Holdings board will comprise the other existing Xeris directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors. A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings' shares of common stock are expected to trade on the Nasdaq Global Select Market (Nasdaq) under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions and approval by Xeris and Strongbridge shareholders.

In addition, certain Strongbridge directors, executive officers, CAM Capital and HealthCap VI, L.P., representing approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

### *Potential Conflicts of Interest*

32.     The breakdown of the benefits of the deal indicate that Strongbridge insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Strongbridge.

33.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Definitive Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction.

| Officer Name | Number of Shares Beneficially Owned (#) |
|---|---|
| John H. Johnson | 174,794 |
| Richard S. Kollender | 28,608 |

| Fredric Cohen, M.D. | 30,956 |
| Stephen Long | 23,600 |
| Scott Wilhoit | 24,025 |

| Non-Employee Director Name | Number of Shares Beneficially Owned (#) |
| --- | --- |
| Garheng Kong, M.D., PhD, MBA | 41,756 |
| David Gill | 55,821 |
| Jeffrey W. Sherman, M.D. | 42,021 |
| Mårten Steen, M.D. | 41,914 [1] |
| Hilde H. Steineger, M.D. | 42,021 |

34.     Moreover, upon the consummation of the Proposed Transaction, the Definitive Proxy Statement indicates that each outstanding Company stock options will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement. However, the Definitive Proxy fails to provide an accounting of such consideration, and instead provides only the following:

| | Number of Shares Subject to Strongbridge Options (#) | Number of Shares Subject to Unvested Strongbridge Options (#) | Spread on Unvested Strongbridge Options ($) (Assuming Value of $2.61/Share) (1) | Number of Strongbridge Options Eligible for Term Extension (#) |
| --- | --- | --- | --- | --- |
| **Executive Officers** | | | | |
| John H. Johnson | 495,724 | 237,500 | 227,063 | 402,500 |
| Richard S. Kollender | 544,918 | 258,437 | 4,837 | 455,000 |
| Fredric Cohen, M.D. | 868,818 | 279,625 | 0 | 553,000 |
| Stephen Long | 714,405 | 206,343 | 0 | 437,000 |
| Scott Wilhoit | 626,000 | 227,250 | 0 | 414,000 |
| | | | | |
| **Directors** | | | | |
| Garheng Kong, M.D. | 154,385 | — | — | 40,000 |
| Jeffrey W. Sherman, M.D. | 140,000 | — | — | 40,000 |
| Mårten Steen, M.D. | 154,918 | — | — | 40,000 |
| Hilde H. Steineger, M.D. | 154,918 | — | — | 40,000 |

35.     Additionally, upon the consummation of the Proposed Transaction, the Definitive Proxy Statement indicates that each outstanding Company Restricted Stock Units will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement as follows:

| | Number of Restricted Stock Units Held (#) | Value of Shares Deliverable in Respect of Unvested Restricted Stock Units ($) |
|---|---|---|
| **Executive Officers** | | |
| John H. Johnson | 770,166 | 2,010,133 |
| Richard S. Kollender | 287,500 | 750,375 |
| Fredric Cohen, M.D. | 181,000 | 472,410 |
| Stephen Long | 143,500 | 374,535 |
| Scott Wilhoit | 113,000 | 294,930 |
| | | |
| **Directors** | | |
| David Gill | 40,000 | 104,400 |
| Garheng Kong, M.D. | 40,000 | 104,400 |
| Jeffrey W. Sherman, M.D. | 40,000 | 104,400 |
| Mårten Steen, M.D. | 40,000 | 104,400 |
| Hilde H. Steineger, M.D. | 40,000 | 104,400 |

36.     Furthermore, the Definitive Proxy Statements indicates that a Retention Bonus Pool has been established for Company insiders, payable after the consummation of the Proposed Transaction under certain circumstances as follows:

| Name | Retention Bonus ($) |
|---|---|
| John H. Johnson | 500,000 |
| Richard S. Kollender | 400,000 |
| Fredric Cohen, M.D. | 300,000 |
| Stephen Long | 300,000 |
| Scott Wilhoit | 300,000 |

37.     The Definitive Proxy Statements also indicates that several Company insiders are entitled to severance agreements, payable after the consummation of the Proposed Transaction under certain circumstances as follows:

| Name | Estimated Severance ($) | Estimated Value of Benefit Continuation ($) |
|---|---|---|
| John H. Johnson | 1,964,296 | 54,975 |
| Richard S. Kollender | 1,130,941 | 39,327 |
| Fredric Cohen, M.D. | 1,027,702 | 39,327 |
| Stephen Long | 902,263 | 39,327 |
| Scott Wilhoit | 897,363 | 39,327 |

38.     In addition, certain employment agreements with certain Strongbridge executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or

officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisite/ Benefits ($)[3)(4)(5] | Total ($) |
|---|---|---|---|---|
| John H. Johnson | 2,464,296 | 2,712,935 | — | 5,232,206 |
| Fredric Cohen, MD | 1,327,702 | 472,410 | — | 1,839,439 |

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Strongbridge, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     On July 29, 2021, the Strongbridge Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

a. The specific powers of the special committee of the Strongbridge Board, including if it had the power to veto proposed strategic alternatives;

b. Whether the confidentiality agreements entered into by the Company with Xeris differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Xeris, would fall away;

d. Specific reasoning as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

e. Specific reasoning as to why the Board agreed to a portion of the merger consideration as a CVR with no guarantee of payment to the stockholders; and

f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders

*Omissions and/or Material Misrepresentations Concerning Strongbridge's Financial Projections*

43.     The Definitive Proxy Statement fails to provide material information concerning financial projections for Strongbridge provided by Strongbridge and Xeris management and relied

upon by MTS and SVB Leerink in their analyses.   The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.     The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Strongbridge and Xeris management provided to the Board, MTS, and SVB Leerink.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45.     With regard to the Strongbridge Projections, including the Base Case, Low Case, and High Case, prepared by the Strongbridge Management, the Definitive Proxy Statement fails to disclose material line items for Unlevered Free Cash Flow, including all underlying necessary metrics and assumptions, and the definition used.

46.     With regard to the *Xeris Adjusted Strongbridge Management* Projections, including the Base Case and Upside Case, prepared by the Xeris Management, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

       a.  Standalone EBITDA, including all underlying necessary metrics and assumptions, and the definition used; and

       b.  Pro Forma EBITDA, including all underlying necessary metrics and assumptions, and the definition used.

47.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of MTS or SVB Leerink's

financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning Xeris's Financial Projections*

50.     The Definitive Proxy Statement fails to provide material information concerning financial projections for Xeris provided by Xeris and Strongbridge management and relied upon by MTS and SVB Leerink in their analyses.  The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

51.     The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Xeris and Strongbridge management provided to the Board, MTS, and SVB Leerink.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

52.     With regard to the Strongbridge Adjusted Xeris Management Projections, prepared by Strongbridge Management, the Definitive Proxy Statement fails to disclose material line items for Unlevered Free Cash Flow, including all underlying necessary metrics and assumptions, and the definition used.

53.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate Xeris's true worth (and therefore the true worth of the merger consideration), the accuracy of MTS or SVB Leerink's financial analyses, or make an informed

decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning The Pro Forma Financial Projections*

56.     The Definitive Proxy Statement fails to provide material information concerning financial projections for the Pro Forma Entity provided by Strongbridge management and relied upon by MTS and SVB Leerink in their analyses.  The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

57.     The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Strongbridge management provided to the Board, MTS, and SVB Leerink. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

58.     With regard to the Strongbridge Management Pro Forma Projections for the Base Case, the Low Case, and the High Case, prepared by Strongbridge Management, the Definitive Proxy Statement fails to disclose material line items for Unlevered Free Cash Flow, including all underlying necessary metrics and assumptions, and the definition used.

59.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

60.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

61.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Pro Forma's true projected worth, the accuracy of MTS or SVB Leerink's financial analyses, or make an informed decision whether to vote in favor of the Proposed

Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Definitive Proxy Statement.

<u>*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*</u>

62.    In the Definitive Proxy Statement, MTS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

63.    With respect to the Strongbridge *Discounted Cash Flow*, the Definitive Proxy Statement fails to disclose:

      a.  The specific inputs and assumptions used to determine the applied ranges of revenue achievements of 50% to 150%;

      b.  The specific inputs and assumptions used to determine the applied weighted average cost of capital of 12% to 14%;

      c.  The specific inputs and assumptions used to determine the application of a zero terminal value;

      d.  The specific inputs and assumptions used to determine the taking into account the effect of $92 million in net operating losses but not the cost of future capital raises; and

      e.  The specific discount rates utilized for each case, as well as the inputs and assumptions used to determine them.

64.    With respect to the Strongbridge *Public Trading Comparable Companies Analysis*, the Definitive Proxy Statement fails to disclose the specific metrics for each comparable company.

65.    With respect to the Strongbridge *Precedent M&A Transaction Analysis*, the Definitive Proxy Statement fails to disclose:

      a.  The specific metrics for each precedent transaction;

       b.   The date on which each precedent transaction closed; and

       c.   The value of each precedent transaction.

66.    With respect to the Xeris *Discounted Cash Flow*, the Definitive Proxy Statement fails to disclose:

       a.   The specific inputs and assumptions used to determine the applied ranges of revenue achievements of 50% to 100%;

       b.   The specific inputs and assumptions used to determine the applied weighted average cost of capital of 10% to 12%;

       c.   The specific inputs and assumptions used to determine the application of a zero terminal value;

       d.   The specific inputs and assumptions used to determine the taking into account the effect of $54 million in net operating losses but not the cost of future capital raises; and

       e.   The specific discount rates utilized for each case, as well as the inputs and assumptions used to determine them.

67.    With respect to the Xeris *Public Trading Comparable Companies Analysis*, the Definitive Proxy Statement fails to disclose the specific metrics for each comparable company.

68.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

69.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Strongbridge stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by SVB Leerink*

70.     In the Definitive Proxy Statement, SVB Leerink describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

71.     With respect to the Xeris *Public Trading Company Analysis*, the Definitive Proxy Statement fails to disclose the specific inputs and assumptions used to determine the applied multiple ranges of 2.5x to 3.6 and 1.5x to 2.4x to Xeris' estimated 2022 and 2023 net revenue, respectively.

72.     With respect to the Xeris *Discounted Cash Flow*, the Definitive Proxy Statement fails to disclose:

    a.  The unlevered, after-tax free cash flows utilized, and the inputs and assumptions underlying them;

    b.  The terminal values utilized, and the inputs and assumptions underlying them;

    c.  The specific inputs and assumptions used to determine the applied perpetuity growth rates of between 1.0% to 2.0%;

    d.  The specific inputs and assumptions used to determine the applied discount rate range of 10.5% to 14.5%;

    e.  Xeris's utilized weighted average cost of capital, including the inputs and assumptions used to determine the same; and

    f.  The estimated cash flow impact of Xeris' available net operating loss carryforwards.

73.     With respect to the Strongbridge *Public Trading Company Analysis*, the Definitive Proxy Statement fails to disclose the specific inputs and assumptions used to determine the applied multiple ranges of 4.4x to 5.7x and 2.2x to 2.9x to Strongbridge's estimated 2022 and 2023 net revenue, respectively.

74.     With respect to the Strongbridge *Sum-of-the-Parts Discounted Cash Flow*, the Definitive Proxy Statement fails to disclose:

   a.  The terminal values utilized, and the inputs and assumptions underlying them;

   b.  The specific inputs and assumptions used to determine the applied perpetuity growth rates of between (20.0%) to 0.0%

   c.  The specific inputs and assumptions used to determine the applied discount rate range of 10.5% to 14.5%;

   d.  Strongbridge's utilized weighted average cost of capital, including the inputs and assumptions used to determine the same; and

   e.  The estimated cash flow impact of Strongbridge's available net operating loss carryforwards

75.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

76.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Strongbridge stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

77.     Plaintiff repeats all previous allegations as if set forth in full herein.

78.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

79.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

80.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

81.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

82.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

83.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

84.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

85.     Plaintiff repeats all previous allegations as if set forth in full herein.

86.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

87.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were

provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

88.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Strongbridge's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

89.     The Individual Defendants acted as controlling persons of Strongbridge within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Strongbridge to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Strongbridge and all of its employees.  As alleged above, Strongbridge is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Strongbridge and obtain a transaction which is in the best interests of Strongbridge and

its stockholders, including Plaintiff;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's

attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 10, 2021                   BRODSKY SMITH

By: _____

Evan J. Smith
esmith@brodskysmith.com
Marc L. Ackerman
mackerman@brodskysmith.com
Two Bala Plaza
333 E. City Ave., Suite 805
Telephone:    610.667.6200
Facsimile:    610.667.9029

*Counsel for Plaintiff*